UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DUSTIN BARNETT,

                           Petitioner,

     v.

STATE OF NEVADA, *et al.*,

                      Respondents.

Case No. 3:14-cv-00155-MMD-WGC

ORDER

This habeas matter comes before the Court for a final decision on the merits.

## I.    BACKGROUND

Petitioner Dustin Barnett challenges his 2012 Nevada state conviction, pursuant to a jury verdict, of first degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and possession of a controlled substance. He was sentenced to, *inter alia,* life with the possibility of parole after 20 years on the murder charge and a consecutive sentence of 32 to 192 months on the weapon enhancement on that charge.

Petitioner challenged his conviction on the murder and robbery charges on direct appeal. He did not pursue state post-conviction review prior to seeking federal habeas relief herein.

## II.    GOVERNING STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v*

*Pinholster*, 563 U.S. 170 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. 563 U.S. at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 563 U.S. at 181-88.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is at best, ambiguous." 540 U.S. at 16. For at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal

1   habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause

2   requires that the federal courts "must be particularly deferential" to state court factual

3   determinations. *Id.* The governing standard is not satisfied by a showing merely that the

4   state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires

5   substantially more deference:

6           . . . . [I]n concluding that a state-court finding is unsupported
            by substantial evidence in the state-court record, it is not
7           enough that we would reverse in similar circumstances if this
            were an appeal from a district court decision. Rather, we
8           must be convinced that an appellate panel, applying the
            normal standards of appellate review, could not reasonably
9           conclude that the finding is supported by the record.

10  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at

11  972.

12          Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be

13  correct unless rebutted by clear and convincing evidence.

14          The petitioner bears the burden of proving by a preponderance of the evidence

15  that he is entitled to habeas relief. *Pinholster*, 563 U.S. at 569.

16  **III.    DISCUSSION**

17          **A.    Ground 1**

18          In Ground 1, petitioner alleges that he was denied rights to due process of law,

19  freedom from self-incrimination, and a fair trial in violation of the Fifth, Sixth and

20  Fourteenth Amendments when the trial court admitted into evidence statements made

21  by petitioner to a law enforcement officer after he had invoked his right to remain silent.

22          The Supreme Court of Nevada denied the claim presented to that court on the

23  following basis:

24          *Motion to suppress*

25          Barnett moved to suppress his statements made to Detective Curtis
            Lampert before and after he was Mirandized because he alleges Detective
26          Lampert did not honor his right to remain silent. The district court denied
            the motion because it found that Detective Lampert "scrupulously honored
27          Barnett's right to remain silent when it was invoked."

28

It is well established that both custody and interrogation must be present in order for a defendant to effectively invoke the Fifth Amendment rights protected by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See McNeil v. Wisconsin*, 501 U.S. 171, 182 n. 3, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (stating that the Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'"). An interrogation invokes *Miranda* protections when it includes "'express questioning [or] any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Archanian v. State*, 122 Nev. 1019, 1038, 145 P.3d 1008, 1022 (2006) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). An officer's request to search a defendant's home generally does not qualify as an interrogation as contemplated in *Miranda* because a consent to search is typically not testimonial. *See United States v. Knope*, 655 F.3d 647, 654 (7th Cir.2011); *People v. Brewer*, 81 Cal.App.4th 442, 96 Cal.Rptr.2d 786, 798 (Ct.App.2000).

Here, while at the police station, Detective Lampert initially informed Barnett that he did not have to talk to the police and that he was free to leave. Barnett said that he wanted to leave and did not want to talk. At this point, Barnett was not in custody, so his decision to remain silent was not yet *Miranda* protected. Detective Lampert left the room, returned a few minutes later, and informed Barnett that he was no longer free to leave. At this point, Barnett was now in custody, such that *Miranda* would have protected him had there been an interrogation. Detective Lampert then left again, returned approximately 20 minutes later, and simply asked Barnett for consent to search his apartment. Barnett gave his consent and Detective Lampert departed. Detective Lampert returned almost two hours later and read Barnett his *Miranda* rights. Thereafter, Barnett voluntarily made a number of incriminating statements.

Barnett's rights were not violated for two reasons: (1) Barnett's initial invocation of his right to remain silent occurred before *Miranda* circumstances even existed, and (2) Detective Lampert's request for consent to search Barnett's apartment did not violate *Miranda*. Detective Lampert properly Mirandized Barnett before he incriminated himself; therefore, the district court did not err when it denied Barnett's motion to suppress.

(ECF No. 14-36 at 3-4.)[1]

Petitioner filed only a conclusory petition and a cursory one-page letter in lieu of a reply. Petitioner, who has the burden of proof on federal habeas review, has not identified therein how the state supreme court's decision was either contrary to or involved an unreasonable application of clearly established federal law as determined

///

---

[1]All page citations are to the CM/ECF generated electronic document page number, not to any page number in the original transcript or document.

4

1  by the United States Supreme Court or was based on an unreasonable determination of

2  the facts in light of the evidence presented at the state court proceeding.

3        From this Court's independent review of the record, it appears that the factual

4  statements made by the state supreme court in rejecting this claim constituted a

5  reasonable determination of the facts in the light of the evidence presented in the state

6  courts. The trial court admitted only those custodial statements made by Barnett after

7  he was given *Miranda* warnings by Detective Lampert. (ECF No. 12-21 at 25.)[2] In his

8  appeal argument, Barnett referred to circumstances occurring prior to that point as

9  bearing on the question of whether these statements to Detective Lampert should have

10  been suppressed. These circumstances covered the time period from when Barnett

11  initially was placed in handcuffs while officers conducted their preliminary investigation

12  at the scene through to the time that Detective Lampert interacted with Barnett at the

13  station after Barnett initially had agreed to be transported to the station for a consensual

14  interview. The state supreme court's factual recital as to the interaction specifically

15  between Barnett and Detective Lampert is adequately supported by the state court

16  record, with Lampert's testimony being corroborated by transcripts and

17  contemporaneous videos of every interaction he had with Barnett except for one. (*See,*

18  *e.g.*, ECF No. 12-17 at 75-95; *see also* ECF No. 12-21 at 4-9 (Detective Lampert's

19  suppression hearing testimony; trial court factual recital with extensive verbatim

20  quotation from the interview transcripts.).) To the extent that petitioner focused on

21  appeal on additional subsidiary factual particulars necessarily subsumed within the state

22  supreme court's recital, those particulars are referenced below.

23        From this Court's independent review of the governing law, it further appears

24  that the state supreme court's decision was neither contrary to nor an unreasonable

25  application of clearly established federal law as determined by the United States

26  Supreme Court.

27  _____

28      [2]In contrast to the state high court's holding on appeal, the trial court held that Barnett was in custody after he arrived at the station. (*Id.* at 16-17.)

The state supreme court's holdings under the governing law that Barnett was not yet in custody when he invoked his right to remain silent and that thereafter he was not interrogated until after being given *Miranda* warnings were neither contrary to nor an unreasonable application of clearly established federal law. Under long-established law, the mere fact that petitioner was placed in handcuffs initially does not in itself signify that he was subjected to a custodial interrogation for purposes of *Miranda*. "Handcuffing a suspect does not necessarily dictate a finding of custody." *United States v. Booth*, 669 F.2d 1231, 1236 (9th Cir.1981). On appeal, Barnett contended that Detective Lampert's request for consent to search his home constituted an impermissible custodial interrogation after he invoked his right to remain silent. He acknowledged, however, that there was a split in federal circuit authority on the point, such that there thus was no holding from the Supreme Court establishing that a request for consent to search constituted an interrogation. (ECF No. 14-28 at 8-9.) The state high court's resolution of such an unsettled question inherently does not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court.[3]

The state supreme court further held that "Detective Lampert properly Mirandized Barnett before he incriminated himself," thereby rejecting petitioner's direct appeal arguments challenging the manner in which the *Miranda* warnings were given and the adequacy of the waiver. This holding was neither contrary to nor an unreasonable application of controlling Supreme Court precedent. Any statements by Barnett to Detective Lampert before he was given the *Miranda* warnings were not admitted into evidence, and the largely one-sided discussion by Lampert just prior to giving the *Miranda* warnings did not undercut the validity of the warnings. (*See* ECF No. 12-21 at 6-9 (Verbatim recital from interview transcript.).)  Petitioner has not cited — either on

---

[3]The court's conclusion that the request for consent to search did not constitute an interrogation undercut Barnett's appeal argument that the request constituted a reinitiation of interrogation only a short time after he invoked his right to remain silent, even if a court were to assume that the invocation was made while in custody in the first instance.

1    direct appeal or now on federal habeas review — any apposite Supreme Court

2    precedent clearly requiring a state court holding to the contrary. Moreover, while Barnett

3    was not asked to execute a written waiver of his *Miranda* rights, the giving of the

4    *Miranda* warnings and his responses were recorded on video. (*See, e.g.*, ECF No. 12-

5    17 at 90-91.)[4] *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010)(express waiver

6    not required).

7          Ground 1 therefore does not provide a basis for federal habeas relief.

8    **B.    Ground 2**

9          In Ground 2, petitioner alleges that he was denied rights to due process of law,

10    freedom from unreasonable search and seizure, and a fair trial in violation of the Fourth,

11    Fifth, Sixth and Fourteenth Amendments when the trial court admitted into evidence

12    items seized from the search of his home. He contends that his consent to the search

13    was invalid.

14          In denying relief on appeal, the state supreme court did not expressly discuss

15    this claim separate and apart from its discussion of the motion to suppress petitioner's

16    statements. In his opening brief on appeal, petitioner relied in part upon his arguments

17    regarding invocation of his right to remain silent as rendering the subsequent consent to

18    search invalid. (*See* ECF No. 14-18 at 25-26.) No motion to suppress had been pursued

19    in the trial court as to items seized during the search, and the issue thus was subject to

20    review on appeal at best only for plain error.

21          This ground is not cognizable in a federal habeas proceeding. In *Stone v. Powell*,

22    428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an

23    opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may

24    not be granted federal habeas corpus relief on the ground that evidence obtained in an

25    unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494 (footnote

26    omitted). Under NRS § 179.085, Nevada provides criminal defendants an opportunity to

27     

28          [4]Lampert's suppression hearing testimony.

fully and fairly litigate constitutional challenges to searches and seizures via a motion to suppress, which was not pursued in the trial court by the defense in this case with regard to the search. Under established law, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *E.g., Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

The Fifth and Sixth Amendment do not provide additional protection in this context over and above that provided under the Fourth Amendment in a manner that would render the claim cognizable notwithstanding *Stone.*

Ground 2 therefore does not provide a basis for federal relief.

**C.    Ground 3**

In Ground 3, petitioner alleges that he was denied a right to a fair trial in violation of the Sixth Amendment because the evidence was insufficient to sustain a conviction for robbery.

The Supreme Court of Nevada denied the claim presented to that court on the following basis:

> *Sufficiency of the evidence*
>
> Barnett next argues that there was insufficient evidence to convict him of robbery because the taking, which occurred after the victim was already dead, was not forceful and he did not intend to permanently deprive the victim of the money. A conviction is supported by sufficient evidence if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution." *Brass v. State*, 128 Nev. ——, ——, 291 P.3d 145, 149–50 (2012).
>
> "Robbery is the unlawful taking of personal property from the person ... against his or her will, by means of force or violence or fear of injury." NRS 200.380(1). Generally, the mere presence of a gun is enough to find a threat of force sufficient to sustain a conviction for robbery. *See, e.g., Dick v. State*, 677 So.2d 1267, 1269 (Ala.Crim.App.1996)(holding that "[w]ielding a gun ... constitutes both the use of force and the threat of force as a matter of law." (internal quotations omitted)). The fact finder may infer the intent to commit a crime "from conduct and circumstantial evidence." *Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001).

///

> Here, it is undisputed that Barnett wore a visible, holstered gun in the presence of the victim while he instructed the victim to leave his watch and his money on a coffee table and then exit Barnett's apartment. Barnett also testified that after he told the victim to leave the watch and the money on the table, Barnett stood up, removed the gun from the holster, cocked it and held it behind him. Viewing this evidence in favor of the prosecution, we conclude that it was sufficient for the jury to find beyond a reasonable doubt that Barnett was guilty of robbery with use of a deadly weapon.

(ECF No. 14-36 at 4-5.)

Petitioner has not disputed therein the state supreme court's summary of the relevant trial evidence in its decision on direct appeal with a showing of clear and convincing evidence in the state court record to the contrary.[5]  The state high court's summary thus is presumed to be correct. *See, e.g., Sims v. Brown*, 425 F.3d 560, 563 n.1 (9th Cir. 2005). Moreover, from this Court's independent review of the record, it appears that the factual statements made by the state supreme court in rejecting this claim constituted a reasonable determination of the facts in the light of the evidence presented in the state courts. (*See* ECF No. 13-6 at 239-49; ECF No. 13-12, at 48-57, 64-70 & 77-91.)

Petitioner further has not identified in his filings how the state supreme court's decision was either contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

From this Court's independent review of the governing law, it appears that the state supreme court's decision was neither contrary to nor an unreasonable application of clearly established law. On a challenge to the sufficiency of the evidence, the habeas petitioner faces a "considerable hurdle." *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003). Under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), the jury's verdict must stand if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *E.g., Davis*, 333 F.3d at 992. Accordingly, the

---

[5]As noted previously, petitioner filed only a conclusory petition and a cursory one-page letter in lieu of a reply.

1  reviewing court, when faced with a record of historical facts that supports conflicting

2  inferences, must presume that the trier of fact resolved any such conflicts in favor of the

3  prosecution and defer to that resolution, even if the resolution by the state court trier of

4  fact of specific conflicts does not affirmatively appear in the record. *Id.* The *Jackson*

5  standard is applied with reference to the substantive elements of the criminal offense as

6  defined by state law. *E.g., Davis*, 333 F.3d at 992. When the deferential standards of

7  AEDPA and *Jackson* are applied together, the question for decision on federal habeas

8  review thus becomes one of whether the state supreme court's decision unreasonably

9  applied the *Jackson* standard to the evidence at trial. *See, e.g., Juan H. v. Allen*, 408

10  F.3d 1262, 1274-75 (9th Cir. 2005).

11       As discussed *infra* as to Ground 4, the Supreme Court of Nevada additionally

12  held in rejecting petitioner's related claims of jury charge error, *inter alia*, that: (1) under

13  Nevada law robbery is a general intent crime; (2) the use of force or violence thus does

14  not need to be with the specific intent to commit a robbery; and (3) the required taking

15  may occur even after the victim is deceased so long as the force or coercion occurred

16  — for whatever purpose — while the victim was alive and the defendant thereafter took

17  advantage of the situation that he created to take the victim's property. (*See* text*, infra*,

18  at 12-13.)

19       Barnett's arguments on direct appeal regarding the sufficiency of the evidence in

20  principal part disagreed with these propositions. (*See* ECF No. 14-18 at 29-31.)

21  However, the *Jackson* federal evidentiary sufficiency standard is applied with reference

22  to the substantive elements of the criminal offense as defined by state law. *E.g., Davis*,

23  333 F.3d at 992. The Supreme Court of Nevada, of course, is the final arbiter of Nevada

24  state law. Barnett's disagreements with the Supreme Court of Nevada over the

25  requisites for a robbery conviction under Nevada state law do not present a viable

26  challenge to the sufficiency of the evidence under *Jackson*.

27       Viewed in the light most favorable to the prosecution, evidence at trial tended to

28  establish that: (1) Barnett told the victim to leave the watch and money on the table and

1    leave while Barnett was openly carrying a .44 caliber revolver in a holster in plain view

2    (ECF No. 13-6 at 239-40 & 247-49; ECF No. 13-12 at 48-49, 54-55, 64, 69, 70, 82 & 84.

3    *See also* ECF No. 13-5 at 37 (visibility of the holster and gun)); (2) Barnett unholstered

4    the weapon, cocked it, and held it behind his back (ECF No. 13-6 at 248; ECF No. 13-

5    12 at 48-51, 55-56, 70, 81 & 85); (3) the victim then tossed the watch to Barnett and he

6    put it in his pocket (ECF No. 13-6 at 248; ECF No. 13-12 at 48-49, 64, 67, 81-82 & 85);

7    (4) Barnett thereafter shot the victim (ECF No. 13-12 at 51-53 & 88); (5) Barnett then

8    immediately took the money out of the victim's wallet (ECF No. 13-12 at 53-54 & 64-65);

9    and (6) Barnett put the money in a cabinet under the bathroom sink allegedly while he

10   was on the phone with 911 dispatch (*Id.* at 54). These facts adequately supported a

11   conviction for robbery under the state supreme court's holdings as to the state law

12   requirements for a robbery conviction. The jury was not required to believe Barnett's

13   testimony regarding his intentions, including his testimony that he put the money in the

14   bathroom cabinet essentially only because his hands were full at the time. (*Id.* at 54 &

15   89-91.) The jury instead could look to the circumstantial evidence presented and draw

16   inferences contrary to Barnett's testimony.[6]

17       The state supreme court's rejection of petitioner's challenge to the sufficiency of

18   the evidence supporting his robbery conviction was neither contrary to nor an

19   unreasonable application of clearly established federal law as determined by the United

20   States Supreme Court.

21       Petitioner does not challenge the sufficiency of the evidence on the other

22   charges.

23       Ground 3 does not provide a basis for federal habeas relief.

24   ///

25   ///

26

27       [6]The Court additionally would note that — even if the point were a material one
     — the victim was not dead at the time that Barnett took the money from his wallet. The
28   victim still had a carotid pulse when officers first arrived. (ECF No. 13-5 at 47.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    Ground 4**

In Ground 4, petitioner alleges that he was denied rights to due process of law and a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments because the trial court gave allegedly confusing and inaccurate instructions regarding the definition of robbery, thus lowering the State's burden of proof.[7]

The Supreme Court of Nevada denied the claim presented to that court on the following basis:

> *Jury instructions*
>
> Barnett argues that jury instruction no. 24 and no. 26 conflict with each other because instruction no. 24 does not require that the intent to rob the victim be formed prior to death, while instruction no. 26 does. Thus,
>
> Barnett claims jury instruction no. 24 inaccurately characterizes robbery as a general intent crime. We disagree.
>
> It is well established in Nevada that robbery is a general intent crime. *See Chappell v. State*, 114 Nev. 1403, 1408, 972 P.2d 838, 841 (1998) (holding that NRS 200.380 "does not require that the force or violence be committed with the specific intent to commit robbery"). Jury instruction no. 24 correctly instructed the jury that "[t]he taking required for robbery may occur after a victim is deceased so long as the force or coercion by the defendant—for whatever purpose—occurred while the victim was alive and the defendant took advantage of the terrifying situation he created to take the victim's property." See NRS 200.380(1); *Norman v. Sheriff, Clark Cnty.*, 92 Nev. 695, 697, 558 P.2d 541, 542–43 (1976) (upholding a robbery conviction despite the fact that "the acts of violence and intimidation preceded the actual taking of the property and may have been primarily intended for another purpose" because the defendants "[took] advantage of the terrifying situation they created" to rob the victim).
>
> Furthermore, under the felony murder rule, a defendant may be convicted of first-degree murder for any killing that occurs during the perpetration of a statutorily enumerated felony. NRS 200.030(1)(b); *Sheriff, Clark Cnty. v. Morris*, 99 Nev. 109, 113, 659 P.2d 852, 856 (1983). However, afterthought robbery cannot form the basis of a felony murder conviction. *Nay v. State*, 123 Nev. 326, 332–33, 167 P.3d 430, 434–35 (2007) (stating that permitting afterthought robbery to form the basis of a felony murder conviction would be inconsistent with the deterrence rationale of the felony murder rule and would impermissibly expand the application of a rule that is meant to be narrowly applied). Here, jury instruction no. 26 correctly instructed the jury that "[a] killing that occurs during the perpetration or attempted perpetration of a robbery is a felony murder . . .; however, afterthought robbery may not serve as a predicate

_____

[7]Ground 4 is asserted in a handwritten page at the very end of the petition.

for felony murder," and that "afterthought robbery occurs where the evidence shows that the defendant killed a person and only later formed the intent to rob that person."

Jury instruction no. 26 simply recognizes that if the defendant did not intend to rob the victim at the time of the killing, then the killing did not occur in the perpetration of robbery so as to support conviction under the felony murder rule. *See* NRS 200.030(1)(b). And jury instruction no. 24 recognizes that while the defendant cannot be convicted of felony murder under these facts, he or she may still be convicted of robbery if the defendant then decides to rob the victim. *See* NRS 200.380(1). Therefore, we conclude that jury instructions nos. 24 and 26 are not inconsistent or inaccurate statements of the law, and thus the district court did not abuse its discretion in giving these instructions.

Lastly, Barnett argues that jury instruction no. 25 was inaccurate because a defendant's good faith belief that he has a claim of right to the property in question negates the intent necessary for robbery. However, Nevada's criminal code does not provide for a good-faith claim-of-right defense to robbery. All that NRS 200.380 requires is the intent to take property by fear or force; a good faith belief that the property at issue is one's own does not nullify the intent to take property from another by force. Accordingly, we conclude that Barnett's argument is without merit.

(ECF No. 14-36 at 5-7.)

Petitioner's conclusory petition and letter reply do not identify how the state supreme court's decision was either contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of fact.

Matters of alleged jury charge error generally present only state law issues that are not cognizable on federal habeas review. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991):

. . . We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam ).

\* \* \*

. . . the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief. *See Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the CALJIC model. . . . The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *see also Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten*, *supra*, 414 U.S. at 147, 94 S.Ct. at 400–01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Ibid.*

502 U.S. at 67-68 & 71-73 (footnotes omitted).

Following upon an independent review of the charges in question (s*ee* ECF No. 13-7 at 27-29), this Court has no difficulty concluding that the state supreme court's implicit rejection of petitioner's federal constitutional claims was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Nothing in the challenged charges, read in the context of the instructions as a whole, presented any cognizable error that violated fundamental fairness and thus resulted in a due process violation.

Ground 4 therefore does not provide a basis for federal habeas relief.

///

///

///

///

14

IV.   **CONCLUSION**

It therefore is ordered that the petition is denied on the merits and that this action shall be dismissed with prejudice.[8]

It further is ordered that a certificate of appealability is denied. For the reasons assigned herein, reasonable jurists would not find the Court's decision to be debatable or incorrect.

The Clerk of Court will enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED THIS 17th day of July 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[8]Petitioner's cursory letter reply discusses an alleged failure to try him within the 60-day speedy trial period allowed under Nevada state law. (ECF No. 19.) A petitioner may not use a reply to an answer to raise additional claims that are not included in the federal petition. *E.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Any added federal claim in the reply (which does not appear to have been exhausted) is not properly before the Court; and the Court, in the exercise of its discretion, does not consider such a claim. To the extent that the letter requests guidance as to how petitioner should handle the alleged speedy trial issue, the Court cannot provide legal advice to petitioner.

The petition names only the State of Nevada and, per the petition form, the state attorney general as respondents. The State is not a proper respondent due to the state sovereign immunity recognized by the Eleventh Amendment, and petitioner's immediate physical custodian has not been named. Respondents have not raised an objection with regard to either the presence of the State or the absence of the custodian as respondent. Particularly given the presence of the state attorney general as a named respondent, it does not appear that the technical deficiency with regard to the respondents named precludes entry of judgment herein. *Cf. Rumsfeld v. Padilla*, 542 U.S. 426, 451-52 (2004) (Kennedy, J., concurring) (suggesting that the rule requiring the naming of the immediate custodian as a respondent was not jurisdictional in the sense of a limitation on subject-matter jurisdiction but instead was best understood as a matter of personal jurisdiction or venue, which was subject to waiver). The matter is properly postured for resolution on the merits, and it is most appropriately resolved at this juncture on that basis.